IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| IDEGY, INC.<br>226 N. Fifth Street, Suite 200<br>Columbus, OH 43215 | : | Case No. |
| | : | |
| | : | Judge |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| G. BRADLEY WEST<br>1146 Forest Ave.<br>River Forest, IL 60305 | : | |
| | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Now comes Plaintiff idegy, Inc. ("Idegy"), by and through counsel, and for its Complaint against Defendant G. Bradley West ("West"), alleges as follows:

**Parties, Jurisdiction and Venue**

1. Idegy is an Ohio corporation with its principal place of business in Franklin County, Ohio.

2. West is an individual residing in River Forest, Illinois.

3. This Court has personal jurisdiction over West because, among other reasons, he has committed one or more torts causing harm to Idegy in the state of Ohio, he consented to jurisdiction in Franklin County, Ohio in a Confidentiality and Non-Compete Agreement in the form attached as Exhibit 1, and he frequently traveled to Columbus, Ohio as part of his responsibilities as an Idegy employee.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:27 PM-18CV000769
Case: 2:18-cv-00081-EAS-CMV Doc #: 3 Filed: 02/02/18 Page: 2 of 15 PAGEID #: 67
0D991 - A2

4.  Venue is proper in Franklin County because all or a substantial part of Idegy's causes of action accrued or arose in Franklin County, Ohio and the parties consented to venue in Franklin County, Ohio.

**Factual Allegations**

5.  Idegy is a consulting, fulfillment, and distribution firm that fills the marketing and branding needs for businesses, individuals, and organizations, including promotional products, the development of and execution of corporate initiatives, brand building, marketing plans and programs, employee and customer incentive and loyalty programs, print campaigns, website design, development and hosting, fulfillment and distribution services, full service administration, global sourcing, and supply chain management.

6.  Idegy does business nationwide and has customers throughout the United States.

7.  Idegy hired West in September 2015 as its Client Development Manager.

8.  As Client Development Manager, West had extensive contacts and relationships with Idegy's clients and prospective clients.

9.  West also had access to significant volumes of proprietary and trade secret information belonging to Idegy.

10. Therefore, as a condition to his employment, Idegy required West to enter into a Confidentiality and Non-Compete Agreement with Idegy.

11. Upon receipt of the Confidentiality and Non-Compete Agreement by e-mail, West accepted it by a return e-mail stating he was signing it and would mail it back to Idegy because he did not have a scanner in his office.

2

12. The executed copy of the Confidentiality and Non-Compete Agreement is not attached hereto because while on information and belief, Idegy received it in the mail from West, Idegy cannot locate it at the current time.

13. The unexecuted copy of the Confidentiality and Non-Compete Agreement between Idegy and West is attached hereto as Exhibit 1.

14. West approved and undertook certain restrictive covenants set forth in the Confidentiality and Non-Compete Agreement.

15. West acknowledged Idegy's ownership of and the proprietary nature of a wide array of business information defined in the Confidentiality and Non-Compete Agreement as "Proprietary Information," including certain information regarding "management, programs, strategies, technology, research, business plans, pricing, rebate schedules, profit margins, accounting, techniques, methods of manufacturing, the suppliers, methods of service, training, financials, projections, suppliers, customers, customer lists, potential customers and potential customer lists and operations of the COMPANY which the COMPANY deems appropriate to disclose." (*See* Confidentiality and Non-Compete Agreement, § 2.)

16. West agreed not to disclose any Propriety Information for his benefit or the benefit of any other entity, and further agreed that he would not "disclose the identity of the COMPANY's customers or potential customers to any person, firm, corporation or other entity for any reason or purpose whatsoever without COMPANY's advance and express written consent." (*See id.*)

17. West also agreed upon Idegy's request to "deliver all information regarding the COMPANY's customers and business to the Company, including copies of documents, and

3

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:25 PM-18CV000769
0D991 - A4
Case: 2:18-cv-00081-EAS-CMV Doc #: 3 Filed: 02/05/18 Page: 24 of 175 PAGEID #: 69

[West] shall not retain any such information in any form, including stored in hard drive or on discs." (*See id.*)

18. West's covenants precluding his misappropriation of Proprietary Information are critical to Idegy because Idegy has invested significant time and resources developing its Proprietary Information.

19. Idegy enjoys a competitive advantage in the marketplace attributable in part to the proprietary nature of this information.

20. West also made other covenants to Idegy that were designed to preclude him from engaging in unfair competitive conduct following termination of his employment.

21. West agreed that for a period of 24 months following the termination of his employment, he would not do any of the following:

> a. "engage, in any way or capacity, either directly or indirectly, in the promotional advertising or public relations business or related services, or in any other activity that would be in competition with the business of COMPANY throughout the United States"; or
>
> b. "render service, or solicit business, whether for [West's] account or an account of any other person, firm, corporation, or entity, to any persons who are or were customers or prospective customers of the COMPANY...."

(*Id.*, § 3.)

22. Idegy then provided West access to a significant volume of Idegy's proprietary and trade secret information.

23. On January 19, 2018, West terminated his employment relationship with Idegy.

4

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:25 PM-18CV000769
Case: 2:18-cv-00081-EAS-CMV Doc #: 3 Filed: 02/02/18 Page: 5 of 15 PAGEID #: 30
0D991 - A5

24. In violation of his restrictive covenants with Idegy, he immediately went to work for FGS, Inc., a direct competitor to Idegy, in a similar role to the one he performed for Idegy, for the same market.

25. In further violation of his restrictive covenants, Idegy has learned that West has contacted current and prospective clients, two professional sports franchises. Idegy is currently negotiating a major contract with one of these franchises.

26. Prior to announcing his termination, West knew he would be leaving Idegy and began planning to steal Idegy's Proprietary and trade secret information.

27. At the current time, Idegy is without information sufficient to know exactly what all has been taken; however, upon information and belief, West has taken substantial volumes of proprietary and trade secret information from Idegy.

28. Prior to leaving Idegy, West deleted years worth of Idegy's electronically stored files containing Idegy's proprietary and trade secret information. West appears to have sought professional assistance to wipe his work laptop entirely clean, entirely deleting all computer programs utilized during his employment. He further deleted all of his Microsoft Outlook files, which contained years of important client communications, including all proposals, quotations, notes of communications, requests for project research, revenue generating emails used to acquire new clients or increase commitments from current clients, invoices, and more. Upon information and belief, West copied all of this information for his own and his future employer's benefit before deleting it.

29. Upon information and belief, despite his already-in-progress plan to steal Idegy's proprietary and trade secret information and take it to a competitor, West stuck around at Idegy just long enough to receive the bonus he anticipated receiving in December 2017.

30. In December 2017, Idegy paid West a bonus of $33,557.00, split into two payments, the last payment occurring December 30, 2017.

31. Obviously, Idegy never would have paid West this substantial bonus if it knew of his already-in-progress plan to breach his restrictive covenants and steal Idegy's Proprietary and trade secret Information.

## COUNT I – BREACH OF CONTRACT

32. Idegy hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

33. West voluntarily entered into the Confidentiality and Non-Compete Agreement.

34. The Confidentiality and Non-Compete Agreement is supported by good and valid consideration, including but not limited to West's continued employment with Idegy.

35. Idegy has performed its obligations under the Confidentiality and Non-Compete Agreement.

36. West is in breach of the Confidentiality and Non-Compete Agreement.

37. West has accepted a position of employment in contravention of the terms of his Confidentiality and Non-Compete Agreement.

38. West has further misappropriated Idegy's Proprietary Information, including using it to solicit Idegy's current and prospective clients and deleting it such that Idegy can no longer access its own Proprietary Information.

39. Idegy has and will continue to suffer substantial and irreparable harm for which there is no adequate remedy at law as a result of West's breaches of the Confidentiality and Non-Compete Agreement.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:25 PM-18CV000769
0D991 - A7
Case: 2:18-cv-0081-EAS-CMV Doc #: 3 Filed: 02/02/18 Page: 7 of 15 PAGEID #: 62

## COUNT II – VIOLATION OF TRADE SECRET STATUTE

40. Idegy hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

41. West had access to and knowledge of Idegy's highly sensitive confidential and proprietary information. This information is unknown to the general public, is not readily ascertainable by proper means by persons or entities who can derive economic value from its disclosure and use, and was developed by Idegy through the years with great effort and at great cost for its exclusive benefit. Idegy has taken reasonable and appropriate measures to maintain the secrecy and confidentiality of this information by limiting access to said information and publishing policies and practices designed to preserve the confidential nature of such information.

42. Idegy's proprietary information, including its client and prospective client information and information regarding business practices, constitute "Trade Secrets" within the meaning of the Ohio Uniform Trade Secret Act, Ohio Revised Code §1333.61 et seq.

43. West, for the benefit of himself and his new employer, has misappropriated Idegy's proprietary information and will inevitably continue to do so by virtue of his position with his new employer.

44. By reason of West's violation of Ohio's Trade Secret Act, Idegy has and will continue to incur substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT III – AGENT'S BREACH OF FIDUCIARY DUTY UNDER THE FAITHLESS SERVANT DOCTRINE

45. Idegy hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

46. West, as an agent of Idegy, owed Idegy fiduciary duties of loyalty.

7

47. West was a faithless agent by illegally, improperly, and dishonestly acting to benefit his future employer in contravention of his duties as an agent of Idegy.

48. Idegy should be permitted to recoup all monies Idegy paid to West during this time, including the $33,557.00 bonus Idegy gave him in December 2017 immediately before he terminated his employment with Idegy.

### COUNT IV – CONVERSION

49. Idegy hereby incorporates the above allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

50. West wrongfully exercised dominion and control over Idegy's proprietary information, to the exclusion of Idegy, because he deleted Idegy's proprietary information such that Idegy can no longer access it. Upon information and belief, West copied this information for his own and his future employer's benefit before deleting it, and thus is continuing to exercise dominion and control over Idegy's property.

WHEREFORE, Idegy prays for judgment in its favor and against West in an amount to be determined at trial along with preliminary and permanent injunctive relief, consequential damages in an amount greater than $25,000, punitive damages in an amount to be determined, court costs, attorneys' fees, and other such relief as the Court may deem just and proper.

8

Case: 2:18-cv-00081-EAS-CMV Doc #: 3 Filed: 02/02/18 Page: 9 of 15 PAGEID #: 694
Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:27 PM-18CV000769
0D991 - A9

Respectfully submitted,

**/s/ Jonathan P. Misny**
Geoffrey J. Moul (0070663)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: moul@mmmb.com
misny@mmmb.com

*Counsel for Plaintiff*

9

# EXHIBIT 1

# CONFIDENTIALITY AND NON-COMPETE AGREEMENT

This is a Confidentiality and Non-Compete Agreement, dated this ____ day of October, 2015 by and between idegy, Inc., whose principal place of business is 226 N. Fifth Street, Suite 220, Columbus, OH 43215(the "Company") and G Bradley West, an individual residing at _____ ("Associate").

WHEREAS, COMPANY desires to hire Associate in connection with overall management of the business, new business development, selling, promoting, marketing and distributing of advertising specialties, promotional products, incentives, premiums, merchandise, printed materials, promotional materials, marketing products, and services ancillary thereto (the "Products"); and

WHEREAS, COMPANY has a policy that every employee, consultant and Associate who is hired by COMPANY shall execute a confidentiality and non-compete agreement similar to this Agreement;

AND WHEREAS, Associate acknowledges and understands such requirement and further understands that the signing of this Agreement is a condition of being hired or retaining employment.

NOW THEREFORE, in consideration of the mutual agreements hereinafter set forth, and subject to the terms and conditions set forth below, the parties hereto, intending to be legally bound, hereby agree as follows:

1.  **Associate's Acknowledgment**.

Associate agrees and acknowledges that in order to assure the Company that it will retain its value as a going concern, and in order for COMPANY to contract with Associate, it is necessary that Associate undertake not to utilize its special knowledge of the COMPANY or the Product for the benefit of anyone other than Company. Associate further acknowledges that Associate will occupy a position of trust and confidence; and will become familiar with the COMPANY's trade secrets and with other proprietary and confidential information concerning the COMPANY.

2.  **Disclosure or Use of Information:**

The COMPANY will deliver or make available to Associate, upon execution and delivery of this confidentiality agreement, certain information about management, programs, strategies, technology, research, business plans, pricing, rebate schedules, profit margins, accounting, techniques, methods of manufacturing, the suppliers, methods of service, training, financials, projections, suppliers, customers, customer lists, potential customers and potential customer lists and operations of the COMPANY which the COMPANY deems appropriate to disclose. All information about the Company furnished by the COMPANY or its affiliates, or its respective directors, officers, employees, or agents (such affiliates and other persons collectively referred to herein as ("Representatives"), whether furnished before or after the date hereof and regardless of

the manner in which it is furnished is referred to in this confidentially agreement as *"Proprietary Information."*

Associate will not communicate or divulge to, or use for its benefit or the benefit of any other person, firm, corporation or other entity, any Propriety Information. Associate will not disclose the identity of the COMPANY's customers or potential customers to any person, firm, corporation or other entity for any reason or purpose whatsoever without COMPANY's advance and express written consent.

Associate will, upon request by the COMPANY, deliver all information regarding the COMPANY's customers and business to the Company, including copies of documents, and Associate shall not retain any such information in any form, including stored in hard drive or on discs.

Proprietary Information is given to Associate with the specific understanding that Associate will treat it as secret, confidential and valuable. Proprietary Information does not include, however, information which (a) is or becomes generally available to the public other than as a result of a disclosure by Associate or Associate's Representatives; (b) was available to Associate on a non-confidential basis prior to its disclosure by the Company; or (c) becomes available to Associate on a non-confidential basis from a person other than the Company who is not otherwise bound by a confidentiality agreement with the Company or its Representatives or is not otherwise prohibited from transmitting the information to Associate. As used in this confidentiality agreement, the term "person" shall be broadly interpreted to include, without limitation, any corporation, company, partnership and individual.

Unless otherwise agreed to in writing by the Company, Associate agrees to exercise care to prevent Proprietary Information disclosure to any third party, using the utmost care as if it were its own confidential information of similar character. Associate shall limit internal dissemination of Proprietary Information within its own organization to individuals whose duties justify the need to know such information, and then only provided that there is a clear understanding by such individuals of their obligation to maintain the confidential status of such information and to restrict its use solely to the purpose specified herein. In the event that Associate is requested pursuant to, or required by, applicable law or regulation or by legal process to disclose any Proprietary Information, Associate agrees that Associate will provide the Company with prompt notice of such request(s) to enable the Company to seek an appropriate protective order.

3.  <u>Non-Compete Provisions</u>

**THE FOLLOWING ARE IMPORTANT RESTRICTIONS THAT, ONCE YOU SIGN THIS AGREEMENT, WILL BECOME BINDING ON YOU. PLEASE READ THESE RESTRICTIONS CAREFULLY BEFORE SIGNING THIS AGREEMENT. BY SIGNING THIS AGREEMENT YOU SIGNIFY YOUR ASSENT TO ABIDE BY THESE RESTRICTIONS.**

*a) <u>Disclosure or Use of Information</u>:*

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:15 PM-18CV000768

The Associate recognizes and acknowledges that Associate will have personal contact with COMPANY clients and customers and prospective customers and that the relationship with and identity of the COMPANY and COMPANY's customers and prospective customers, as such may exist from time to time, is valuable, special and unique asset of the COMPANY and its business.  The Associate will not, during and after the term of his/her employment (no matter what position Associate may then hold), disclose the identity of the COMPANY or COMPANY's customers, prospective customers, or their employees to any person, firm, corporation or other entity for any reason or purpose whatsoever.  The Associate will not, during or after the term of his/her employment, communicate or divulge to, or sue for his/her benefit or the benefit of any other person, firm, corporation or other entity, any information concerning the conduct and methods of the COMPANY or Company's business, pricing, accounting, and techniques, or the methods of servicing, the services, customer or client information or the sale of services by the COMPANY or to the COMPANY or its customers.

The Associate will, at the time of termination of his/her employment, deliver all information regarding the COMPANY and its customers and business to the COMPANY and the Associate shall not retain any such information in any form.

### b)   *Covenant Against Competition*.

At all times during Associate's employment, and for a period of two (2) years after the termination of employment with COMPANY for any reason, Associate agrees:

    i) not to engage, in any way or in any capacity, either directly or indirectly, in the promotional advertising or public relations business or related services, or in any other activity that would be in competition with the business of COMPANY as that business is conducted at the time of the termination of Associate's employment, throughout the United States.  The Company currently does a national business and this restriction will include all customers, and prior customers in the United States; and

    ii) not to render service, or solicit business, whether for Associate's account or an account of any other person, firm, corporation, or entity, to any persons who are or were customers or prospective customers of the COMPANY, including, but not limited to customers or prospective customers with whom Associate had personal contact during the time of Associate's employment, without regard to where those customers or the Associate's post-employment competition may be situated.  The parties understand and agree that the restriction set forth in this paragraph also extends to the Associate recommending or directing such customers or prospective customers to any other competitive concerns, or assisting in any way any competitive concerns in soliciting or providing services to such customers, whether or not Associate personally provides any services directly to such customer or prospective customer.

    iii) For purposes of this section, the term "prospective customer" means any company or legal person who has been contacted or solicited for business by COMPANY within eighteen months prior to Employee's termination date.  "Customer" means any company or legal person

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:27 PM-18CV000769
Case: 2:18-cv-00091-EAS-CMV Doc #: 5 Filed: 02/24/18 Page: 14 of 27 PAGEID #: 89

who has done business with COMPANY within thirty-six months prior to Employee's termination date with the COMPANY.

It is also agreed that if for any reason the area or time restrictions set forth above are too broad so as to be unenforceable by law, then they, or either one of them, shall be reduced to such area or time as shall be legally enforceable. If it is judicially determined that this agreement not to compete, or any portion thereof, is illegal or offensive under any applicable law (statue, common law, or otherwise), then it is hereby agreed by Associate and the COMPANY that the non-competition covenant shall be in full force and effect to the full extent permitted by law. By this agreement, the parties intend to have this agreement not to compete to be in full force and effect to the greatest extent permitted.

iv) Associate shall not directly or indirectly own, manage, operate, gain control of, finance or otherwise participate, within the Territory in the ownership, management, operation or control of, or be connected in any manner with, any business which is competitive with the business of the Company, nor shall he or she directly or indirectly tamper with or induce any employee, agent, Associate, contractor, customer, supplier, manufacturer or dealer of the Company to leave, stop selling to or stop buying from the Company or otherwise to abandon the Company.

c) <u>Other Associates</u>.

During and after the term of the Associate's employment, the Associate will not employ or seek to employ any person who is employed by the COMPANY or Company, and will not, directly or indirectly, induce any such person to leave his or her employment unless the Associate has obtained the prior written consent of the COMPANY.

d) **Enforcement.**

The covenants contained in this Agreement shall be construed as independent of any other provisions or covenants, and the existence of any claim or cause of action of the Associate against the COMPANY whether predicated on this Agreement or otherwise, or the actions of COMPANY with respect to enforcement of similar restrictions as to other employees, shall not constitute a defense to the enforcement by the COMPANY or Company of such covenants.

The Associate acknowledges and agrees that the Company has invested great time, effort and expense in its national business and reputation and that the services performed by Associate are unique and extraordinary, and agrees that the COMPANY shall be entitled, upon a breach of this Section of this Agreement, to injunctive relief against such activities, or any other remedies available to the COMPANY at law or equity. Any specific right or remedy set forth in this Agreement, legal, equitable or otherwise, shall not be exclusive but shall be cumulative upon all other rights and remedies set forth herein, or allowed or allowable by this Agreement or by law, including the recovery of money damages. The failure of the COMPANY to enforce

Associates initials_____

Franklin County Ohio Clerk of Courts of the Common Pleas- 2018 Jan 24 5:27 PM-18CV000769

any of the provisions of this Agreement, or the provisions of any agreement with any other Associate, shall not constitute a waiver or limit any of the COMPANY rights. The enforcement period shall begin anew each time it is breached.

4. **Jurisdiction; Governing Law**

The parties specifically agree that this Agreement is to be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of the Agreement shall be governed, by the law of the State of Ohio. Each party hereto agrees that all suits, actions and proceedings brought by such party hereunder shall be brought only in Franklin County, State of Ohio.

5. **Mutual Drafting**

The Parties to this Agreement participated in arms length negotiations in good faith to arrive at the final language used within this Agreement. Each Party had the opportunity to seek independent legal counsel of their own choosing to review the Agreement and advise each Party of their legal rights and ramifications of entering into the Agreement. Further, each Party to this Agreement assisted in the drafting of the Agreement, thus the Parties agree that any ambiguities shall not be construed with any prejudice against either Party.

6. **Modification**

Any modification of this Agreement must be in writing and agreed to by the Parties to be enforceable.

IN WITNESS WHEREOF, the parties have executed this Agreement, effective on the day and year first written above.

**Associate:**  **IDEGY:**

By: Matthew A. Grossman, CEO

_____
Printed Name

_____  _____
Signature  Signature

_____

_____
Address (Street, City, State, Zip Code)